IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID ADKINSON, | ) | |
| Individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No.  4:17-cv-00006 |
| | ) | |
| ADEPTUS HEALTH INC., | ) | |
| ADEPTUS HEALTH LLC, | ) | |
| ADEPTUS HEALTH COLORADO HOLDINGS LLC, | ) | |
| and ADEPTUS HEALTH MANAGEMENT LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S CLASS ACTION COMPLAINT

### Case Summary

1.      This case arises out of Defendant Adeptus Health Inc., Defendant Adeptus Health LLC, Defendant Adeptus Health Colorado Holdings LLC, and Defendant Adeptus Health Management LLC's (collectively "Adeptus" and d/b/a First Choice Emergency Room and/or UCHealth Emergency Room) fraudulent and unconscionable failure to disclose "Facilities Fees" to consumers before they are treated at Adeptus's so-called free-standing emergency rooms (the "FSERs").

2.      When patients who are in need of medical treatment visit an Adeptus FSER, they are not told in advance of receiving treatment that they will be charged a Facilities Fee.

3.      Indeed, Adeptus actively conceals its billing practices from consumers until they send the patients their bills.

1

4.      It is only upon receiving their bills that consumers learn for the first time that Adeptus charges a Facilities Fee, which can be as much as $6,000 or higher.

5.      Adeptus's failure to disclose Facilities Fees to their trusting patients is fraudulent, unconscionable, violates the Texas Deceptive Trade Practices Act, and has resulted in hundreds of millions of dollars of unjust enrichment to Adeptus.

6.      Plaintiff, on behalf of himself and all others in Texas and Colorado similarly situated ("Class Members"), sues Adeptus to recover all Facilities Fees paid by Texas and Colorado consumers from 2013 to the present and to enjoin Adeptus from continuing its deceptive and fraudulent acts in the future.

## Parties, Jurisdiction, and Venue

7.      Plaintiff David Adkinson is a physician residing and domiciled in Colorado Springs, CO.  Dr. Adkinson is a citizen of Colorado.

8.      Defendant Adeptus Health Inc. is a Delaware corporation with its principal place of business in Lewisville, Texas.  This Court has personal jurisdiction over Defendant Adeptus Health Inc. because it has its principal place of business in Texas and is at home in the forum state. Defendant Adeptus Health Inc. can be served through its registered agent The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

9.      Defendant Adeptus Health LLC is a Delaware limited liability company with its principal place of business in Lewisville, Texas.  This Court has personal jurisdiction over Defendant Adeptus Health LLC because it has its principal place of business in Texas and is at home in the forum state.  Defendant Adeptus Health LLC can be served through its registered agent Timothy Fielding at 2941 Lake Vista Drive, Lewisville, TX 75067.

10.     Defendant Adeptus Health Colorado Holdings LLC is a Texas limited liability company with its principal place of business in Lewisville, Texas.  This Court has personal jurisdiction over Defendant Adeptus Health Colorado Holdings LLC because it has its principal place of business in Texas and is at home in the forum state.  Defendant Adeptus Health Colorado Holdings LLC can be served through its registered agent Graham Cherrington at 2941 S. Lake Vista Drive, Suite 200, Lewisville, TX 75067.

11.     Defendant Adeptus Health Management LLC is a Texas limited liability company with its principal place of business at 2941 Lake Vista Drive, Lewisville, TX 75067.  This Court has personal jurisdiction over Defendant Adeptus Health Management LLC because it has its principal place of business in Texas and is at home in the forum state.  Defendant Adeptus Health Management LLC can be served through its registered agent Graham Cherrington at 2941 S. Lake Vista Drive, Suite 200, Lewisville, TX 75067.

12.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d) because at least one Class Member is diverse from at least one defendant, the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and there are more than 100 Class Members.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in Lewisville, Texas which is in the Sherman Division of the Eastern District of Texas.

## Facts

### *FSERs Generally*

14.     Freestanding Emergency Medical Care Facilities (FSERs) are staffed by emergency physicians and have laboratory and radiology equipment, including but not limited to

CT scanners, ultrasounds and x-ray machines.  They are usually open 24 hours a day, 7 days a week, and are equipped to handle most types of medical emergencies.

15.     FSERs often do not accept Medicaid and are most often located in or adjacent to affluent neighborhoods where the potential patient pool has quality insurance.  Adeptus targets patients who have policies with high deductibles, meaning that the patient is often left to pay most or all of the Facilities Fees and other charges.

16.     Urgent care centers, on the other hand, are set up to assist patients with non-life-threatening illnesses at times during which their primary care physician is not available.

17.     There are more than one thousand urgent care centers in the State of Texas.  Urgent care centers are appropriate for minor medical problems that could be treated in a primary care physician's office.  They are similar to after-hours doctor clinics but are not open 24 hours a day and may not be staffed by physicians.

18.     Urgent care centers bill similarly to doctors' office visits, typically collecting an office-visit co-pay from the patient and submitting the remainder of the bill to the patient's health insurance carrier.

19.     FSERs and traditional urgent care centers appear to the consuming public to be synonymous, and it is this perception upon which Adeptus preys.

20.     Because of FSERs' similar appearance to traditional urgent care centers, including their signage and retail positioning, and their mass marketing via radio, billboards and direct mail, consumers have become confused as to what, exactly, is the facility they are visiting, and which is appropriate for what kind of care.

21.     In 2009, Texas passed legislation authorizing FSERs, and the Texas Department of State Health Services promulgated their governing regulations at 25 Texas Administrative Code

4

Section 131.  Texas FSERs may be either hospital-owned, or owned by providers and/or investors, are emergency-care facilities that are structurally separate and distinct from hospitals, and are intended to receive patients for emergency care.  25 TEX. ADMIN. CODE § 131.2(14).

22.     Colorado FSERs also can be hospital owned and operated, independently owned and/or hospital-affiliated, and are also regulated by state and federal law.[1]  *See, e.g.,* 6 COLO. CODE REGS. § 1011-1, Chapter 9, Part 18.102(2).

<u>*The Adeptus Defendants*</u>

23.     Seeking to take advantage of the consumer's confusion between urgent care clinics and FSERs, Adeptus owns and operates "First Choice" and "UCHealth" Emergency Rooms in Texas and Colorado.

24.     Plaintiff has named as Defendants herein: Adeptus Health Inc. d/b/a First Choice Emergency Room, Adeptus Health LLC, Adeptus Health Colorado Holdings LLC, and Adeptus Health Management LLC.

25.     In 2013, Adeptus Health LLC was created as a holding company to own and operate free standing emergency rooms in Texas marketed to consumers as First Choice Emergency Rooms.

26.     Adeptus Health Inc. was incorporated as a Delaware corporation on March 7, 2014 for the purpose of conducting an initial public offering, which was completed on June 30, 2014. In connection with the initial public offering, Adeptus completed a reorganization, which among other things, resulted in Adeptus Health Inc. becoming a holding company with its sole material asset being a controlling equity interest in Adeptus Health LLC. As the sole managing member of

---

[1]*See     generally*     https://www.colorado.gov/pacific/sites/default/files/Summary%20Overview%20-%20Aug%202016.pdf

Adeptus Health LLC, Adeptus Health Inc. operates and controls all of the business and affairs of Adeptus Health LLC. Adeptus Health Inc. owns 100% of the voting rights of Adeptus Health LLC, and therefore has control over Adeptus Health LLC and all Adeptus FSERs.

27.     In April 2015, University of Colorado Health, a Colorado nonprofit corporation ("UCH"), and Adeptus Health Colorado Holdings LLC, a Texas limited liability company, formed UCHealth Partners LLC, a Colorado limited liability company, for the purpose of developing, owning and operating FSERs in the States of Colorado and Wyoming.  UCH and Adeptus Health Colorado Holdings LLC, both members of UCHealth Partners LLC, entered into an Operating Agreement governing their rights and duties in the operation and management of the Colorado FSERs.

28.     Under the terms of the Operating Agreement, all notices, demands or requests to Adeptus Health Colorado Holdings, LLC, are to be delivered to Adeptus Health Inc. in Lewisville, Texas.

29.     The Operating Agreement names another Adeptus entity, Adeptus Health Management LLC, a Texas limited liability company, as "Manager."

30.     Also in April 2015, in conjunction with the Operating Agreement, UCHealth Partners LLC and Adeptus Health Management LLC, a Texas limited liability company, entered into a Management Services Agreement.  The Management Services Agreement sets forth Adeptus Health Management LLC's obligations as Manager of the Colorado facilities, including that Adeptus Health Management LLC shall manage and supervise the day-to-day operations of the facilities and implement all aspects of the operation of the Colorado FSERs.

31.     Plaintiff has referred to these Adeptus entities collectively as "Adeptus" given their joint and often indistinguishable operation of the companies' FSERs in both Texas and Colorado.

32.     As to consumers, all Adeptus entities act singularly under the same "First Choice" or "UCHealth" name, and their complex corporate structure and relationships and agreements regarding the internal operations of the FSERs are not generally known to the public.

*Adeptus's "First Choice" and "UCHealth" FSERs*

33.     With the largest network of independent freestanding emergency rooms in the United States, Adeptus has experienced rapid growth over the past few years.

34.     In Texas, Adeptus FSERs grew from 14 facilities at the end of 2012 to 26 facilities at the end of 2013, to 55 facilities as of December 31, 2014, 64 as of January 2016, and 75 as of December 2016.

35.     Adeptus facilities in Texas, all marketed under the "First Choice Emergency Room" name, are currently located in the Houston, Dallas/Fort Worth, San Antonio and Austin, Texas areas, and Adeptus is aggressively expanding its locations throughout Texas and elsewhere.

36.     In 2014 or early 2015, Adeptus began opening facilities in Colorado under the "First Choice" brand.

37.     After Adeptus partnered with UCHealth in April 2015, all "First Choice" FSERs facilities in Colorado were rebranded as "UCHealth" Emergency Rooms.

38.     UCHealth FSERs, however, continue to be managed and controlled by Adeptus and its affiliates.

39.     First Choice's website continues to advertise the UCHealth Denver and Colorado Springs FSER locations along with the Texas locations (*see* www.fser.com/locations).

40.     Defendant Adeptus Health Management LLC also manages and supervises the day-to-day operations of the Colorado FSERs and is responsible for billing and collection services under the terms of the Management Services Agreement with UCHealth.   Adeptus Health

Management LLC is also responsible, as Manager, for implementing all aspects of the operation of the Colorado FSERs, advising UCHealth on material aspects of the operation of the Colorado FSERs, including regulatory and contractual requirements and marketing activities, and reviewing the cost-effectiveness and quality of services rendered to patients.

41.     There are now over 20 Adeptus FSERs in Colorado marketed under the UCHealth name.

<em>The Deceptive Business Model</em>

42.     Adeptus's business model is to trick patients into believing that its centers are appropriate for non-emergent care for the purpose of extracting extravagant fees.  Then, after the patients are treated, they are sent a bill that includes a Facilities Fee—which can be as much as $6,000 or more.

43.     Adeptus engages in targeted marketing campaigns, including direct mail, radio, television, outdoor advertising, digital and social media, by which Adeptus aims to increase patient volumes by reaching a broad base of potential patients in order to increase brand awareness.  In none of these ads, however, does Adeptus explain that it charges Facilities Fees.

44.     Adeptus even has a dedicated field marketing team that works to increase the volume of patients seeking care at its facilities.  This dedicated field marketing team targets specific audiences by attending local chamber of commerce meetings, meeting with primary care physicians and visiting with school nurses and athletic directors, in order to increase patient volumes within a facility's local community.

45.     What Adeptus does *not* tell its patients before they are treated is that each and every one will be charged a costly Facilities Fee.

8

46.     In fact, rather than advise consumers of the increased cost, Adeptus's website touts of "The First Choice Emergency Room advantage," noting the "advantages" of their FSERs when compared to hospital emergency rooms and urgent care clinics without disclosing the dramatically increased cost (*see* www.fcer.com/about-us/our-mission).

47.     Traditionally, Facilities Fees have been charged by hospital emergency rooms to help recoup the cost of operating the hospital ER, including 24 hour staffing and special equipment, and to cover the overhead of being prepared to handle any situation that presents (natural disaster, terrorist attack, ambulance diversion, etc.), offset losses incurred in treating Medicaid populations, and to subsidize charity care/sliding fee scales serving the poor and indigent.

48.     Facilities Fees have been reported to be $6,000 or more.

49.     Urgent care centers do not charge Facilities Fees.

50.     Doctors' offices do not charge Facilities Fees.

51.     Adeptus, however, charges every single patient—emergency or not—astronomical Facilities Fees.

52.     As a matter of pattern and practice, Adeptus preys on patients that more appropriately should be treated at an urgent care center or at their doctor's office.  Adeptus targets non-emergent patients to be treated at their facilities for one simple reason:  money.

53.     As a result of the undisclosed Facilities Fees, FSERs can cost up to ten times the cost of a comparable visit to an urgent care center an often costs significantly more to the consumer in out-of-pocket expenses than a traditional emergency room attached to a hospital.

54.     In fact, in an effort to continue to conceal the nature of FSER's fraudulent practices, in the spring of 2015, the Texas Association of Free Standing Emergency Centers lobbied the

Texas Legislature not to pass a law that would require FSERs to post notice that they charge Facilities Fees to patients.

55.     Similarly, legislation prohibiting FSERs from charging Facilities Fees was proposed in Colorado in 2014, but never voted on.

*Adeptus's Duty to Disclose*

56.     According to the "Patient Rights" section of the Texas Administrative Code governing FSERs in Texas, "information shall be available to patients and staff concerning fees for services provided;" and "marketing or advertising regarding competence or capabilities of the organization shall not be misleading to patients."   25 TEX. ADMIN. CODE § 131.59(f)(5),(g).

57.     Similarly, in Colorado, hospitals and other healthcare facilities have a duty to provide the average charge to a consumer in a non-emergent situation.   Under the provisions governing disclosures to consumers, all hospitals and health-care facilities are required to "disclose to a person seeking care or treatment his or her right to receive notice of the average facility charge for such treatment that is a frequently performed inpatient procedure prior to admission for such procedure; except that care or treatment for an emergency need not be disclosed prior to such emergency care or treatment. When requested, the average charge information shall be made available to the person prior to admission for such procedure." COLO. REV. STAT. § 6-20-101.

58.     According to the Board of Directors of the Colorado Chapter of the American College of Emergency Physicians, for "consumer protection and transparency," an FSER should have "clear signage…that billing includes professional and facility fees comparable to a hospital based emergency department."

59.     In its Texas and Colorado facilities, Adeptus, however, fails to make information available to patients concerning the Facilities Fees they will be charged for services provided and to make clear that their billing includes Facility Fees.

60.     In fact, nowhere in Adeptus's patient intake forms—including the Financial Responsibility and Acknowledgement Form, the Patient Profile Form, and the Consent for Treatment Form—are the Facilities Fees disclosed.

61.     A review of online complaints filed with the Better Business Bureau confirms that the fraudulent practices, including undisclosed and exorbitant Facilities Fees are common to the class:

- "They do not disclose how much their services cost. Had I been told how expensive it would be, I would have chosen to go elsewhere.  The amount they charged for what they did is outrageous. I asked how much it would be before I was seen by the doctor and they couldn't tell me. I was shocked when I got the bill and asked for an explanation, like how much they charge an hour. They said they charge emergency prices, but were non-specific about their pricing structure. If they are going to charge emergency prices, they should not treat non-emergencies, they should warn the consumer about their prices, or both. So not only did they not disclose how much their services are beforehand, they also did not set up a payment agreement until after their services are rendered, which puts the consumer in a bad position. Plus, the price they charge is not commensurate with the service I received. It is outrageous. I suspect that's why they don't disclose it to begin with. If consumers were aware of their prices, fewer clients would walk through their doors. Consumers have a right to know pricing before purchase."

- "This business presents itself in a misleading a deceptive way as it appears similar to an urgent care facility yet charges as a hospital E.R. At no time did anyone at First Choice make it clear that this was not urgent care, but emergency room care, and would be billed at a significantly higher rate that many insurance companies (Cigna) would not cover. First Choice presents itself as an urgent care facility, located next to fast food restaurants and gas stations, without an ambulatory entrance or hospital anywhere in sight which the public associates with an emergency room."

- "I consider First Choice's business practices to be fraudulent and misleading and the inflated charges are completing without merit.  When a person walks into an emergency they know it will be more expensive than a traditional doctor visit. But, clearly the person is in severe enough pain that they willingly walk in the door and ask for care. Which apparently is why First Choice thinks they can take advantage of people in a vulnerable position.  If I had been told upfront by First Choice when I walked in on 2/28/14 that I

was being rated a "Level 4" and would be charged a $1,594 facility fee then I would have turned around and walked out. This is basically a cover charge to get in the door and if they do any tests then your meter starts running.  First Choice claims they can't possibly tell you upfront how much the visit will cost, even though they know full well about the $1,500 facility charge they will be handing you. If they had mentioned the $1,500 facility fee to me I never would have stayed. I am on a high deductible insurance plan and am very aware that I am responsible for the majority of the charges I incur when I seek medical attention. I guess I was naive in thinking that I could get good care at a fair price. If First Choice thinks those prices are fair, they should at least have to disclose them to the patients before they decide if they want to be treated."

- "I was not informed of the charges prior to service and did not authorize any of the charges. I feel the charges are excessive and unauthorized.  First Choice never informed me of any charges that I would be responsible for at any time before or during my visit."

- "Facility charge. This was never disclosed prior to treatment
  Ridiculous charges."

- "Deceptive Business Practice of not pointing out to customers that they are just for emergency services ONLY when customer accidently comes in. My husband made a visit, and then my daughter, for cold related symptoms. As we were going out of town for Christmas we wanted to be sure we were treated before we left in case it got worse while we were on the road. Neither time did the desk person or nurse or doctor let us know that we had mistakenly come to a place that just did emergencies. We CLEARLY were not an EMERGENCY. As this is a fairly new concept to the area we mistakenly went here to be treated for non-emergency ailments. When we got the bill my stomach just dropped as I was very upset to see how much it was. I have never been so upset with a business before and felt like I was taken advantage of. Each visit was charged a facility charge of $1594 as well as doctor's fees over $400."

- "All of that came crashing down when we received a bill for $1,291.40 that we were to pay out of pocket. We thought it was a mistake so we called our insurance company first. They informed us it wasn't a mistake b/c this facility was out of our network. My wife called FC only to be informed that we were indeed on the hook for this amount. At no point did the person who took our insurance card or our co-pay decide it would be worthwhile to mention they would be charging us $900 for a "facility fee" because they're technically an emergency room. It would have taken 30 seconds to make us aware of that and we would have hopped into the car and gone to any one of about 15 other urgent care facilities within 10 miles that would have been covered by our insurance and aren't 'emergency rooms'."

- "This facility does not make you aware of outrageous facility charges that are more than insurance approves prior to being seen. My two children and I went to First Choice ER in Colleyville on January 1, 2014 due to high temperature and flu like symptoms. We were seen almost immediately and did not receive any communication about facility fees or prices being so high that insurance would not cover a majority of the visit. I paid my

$300 co pay ($100 each) and left with nothing but confirmation that we did not have flu. On Wednesday, 3/5/2014 I received an invoice via email for $1064.34 for services not covered by insurance. I contacted Blue Cross Blue Shield and they explained that the charges are inflated and they can only cover what the charges should be based on the coding. Please understand that my children and I were placed in the same room and were seen at the same time. My biggest complaint is the fact that we are charged 3 facility fees. $628 for one child who laid on the treatment bed, $628 for one child that sat in my lap and $940 for me that sat in a plastic chair. We occupied 1 room for less than 30 minutes. I paid my $300 co-pay and had no idea that I was going to be hit with such large fees afterwards. While I did sign that I would be responsible for any charges not covered by insurance, I had no idea that would include $2196 in facility charges prior to insurance. After insurance, I am left with $1064.34 which is mostly facility fees. I have contacted First Choice and they explained that the fees are much higher because they are an emergency room facility."[2]

62.     Adeptus has continued those fraudulent and unconscionable practices in Colorado, and similar online complaints have been filed by Colorado patients regarding the deceptive billing and business practices.[3]

63.     In fact, in November 2015, the NBC news affiliate in Denver ran a story entitled "Buyer beware:  freestanding emergency rooms."  In that piece, it was revealed that one patient was charged a Facilities Fee of $6,237—for complaining of shortness of breath.  That news story led to a precipitous drop in Adeptus's stock price and a slew of securities class actions based upon Adeptus' predatory billing practices.

64.     Adeptus has collected hundreds of millions of dollars in Facilities Fees during the Class Period.

---

[2]     *See generally* https://www.bbb.org/dallas/business-reviews/emergency-rooms/adeptus-health-in-lewisville-tx-90025265/reviews-and-complaints.

[3]     *See, e.g.,* https://www.bbb.org/dallas/business-reviews/emergency-rooms/uchealth-emergency-room-in-arvada-co-90538459/reviews-and-complaints;https://www.bbb.org/dallas/business-reviews/emergency-rooms/uchealth-emergency-room-in-thornton-co-90558582/reviews-and-complaints;
https://www.bbb.org/dallas/business-reviews/emergency-rooms/uchealth-emergency-room-in-littleton-co-90558589/reviews-and-complaints

*Plaintiff and Class Representative Dr. David Adkinson's Experience*

65.    In February 2016, Plaintiff David Adkinson fell while shoveling snow.  Dr. Adkinson, who is a veteran and psychiatrist practicing in Colorado, had difficulty flexing his hip, so he visited the Adeptus/UCHealth location in Colorado Springs (North Location/Meadowgrass Dr.).

66.    At the time of his visit, Dr. Adkinson was not aware that the fees charged by Adeptus would be substantively different, not to mention significantly higher, than the fees charged by a nearby urgent care facility.

67.    Dr. Adkinson had a roughly five-minute encounter with the provider at the FSER, including a minimal physical examination.  After an x-ray, Dr. Adkinson's was diagnosed with a "thigh contusion."

68.    A few months later, Dr. Adkinson received a bill for over $2,000, over $1,200 of which was the Facilities Fee.

69.    The Facilities Fee was not disclosed to him when he was being treated at the Colorado FSER.

70.    Ultimately, Adeptus charged Dr. Adkinson more than $2,000 for a five-minute examination and a diagnosis of a bruise.

71.    Dr. Adkinson's experience is illustrative and typical of Adeptus's common, widespread and classwide deceptive business practices.

**Class Allegations**

72.    Pursuant to FRCP 23(b)(2) and (b)(3), Plaintiff brings this action on his own behalf and on behalf of proposed classes of all other similarly situated persons in Colorado and Texas consisting, respectively, of:

All persons in Texas and Colorado that were charged a Facilities Fee for visiting a First Choice-branded or UCHealth-branded freestanding emergency room in the four years preceding the filing of this Petition (the "Class Period").

73.    Excluded from the Classes are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which any Defendant has a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

74.    Upon information and belief, the Class consists of thousands of consumers. Accordingly, it would be impracticable to join all Class Members before the Court.

75.    There are numerous and substantial questions of law or fact common to all of the members of the Class and which predominate over any individual issues.  Included within the common question of law or fact to be shown through common evidence are:

a.    Whether Adeptus had a duty to disclose the Facilities Fees;

b.    Whether Adeptus failed to disclose the Facilities Fees;

c.    Whether this omission was part of Adeptus's uniform policies and/or customary pattern and practices;

d.    Whether Adeptus intended to induce Plaintiff and Class Members to pay the Facilities Fees;

e.    Whether Adeptus engaged in unconscionable actions;

f.    Whether Adeptus was unjustly enriched by the collection of Facilities Fees; and

g.  The proper measure and amount of damages sustained by Plaintiff and Class Members.

76.     The claims of the Plaintiff are typical of the claims of Class Members, in that they share the above-referenced facts and legal claims or questions with Class Members, there is a sufficient relationship between the damage to Plaintiff and Defendants' conduct affecting Class Members, and Plaintiff has no interests adverse to the interests other Class Members.

77.     Plaintiff will fairly and adequately protect the interests of Class Members and has retained counsel experienced and competent in the prosecution of complex class actions.

78.     Adeptus has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

79.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, if any.

80.     Adeptus's failure to disclose Facilities Fees will be shown through common evidence.

81.     A class action is superior to other methods for the fair and efficient adjudication of this controversy because (i) there has been no interest shown of members of the class in individually controlling the prosecution of separate actions; (2) Plaintiff is aware of no other litigation concerning the controversy already commenced by any member of the class; (3) it is desirable to concentrate the litigation in this forum, which is familiar to both Plaintiff and Defendants; and (4) there are no difficulties likely to be encountered in the management of this class action.

**Causes Of Action**

*Count One – Fraud by NonDisclosure*

82.     Plaintiff incorporates all preceding paragraphs as if fully set out herein.

83.     Adeptus failed to disclose to Plaintiff and Class Members in advance of treating them that they would be charged a Facilities Fee.

84.     In both Texas and Colorado, Adeptus had a statutory duty to disclose to Plaintiff and Class Members that it would charge Plaintiff and Class Members a Facilities Fee.  *See* 25 TEX. ADMIN. CODE § 131.59(f)(5),(g); COLO. REV. STAT. § 6-20-101.

85.     Adeptus, however, failed and fails to make information available to patients concerning the Facilities Fees they will be charged for services provided.

86.     Adeptus also had a common-law duty to disclose Facilities Fees to its patients because it has a special relationship with the patients requiring disclosure, because Adeptus creates a false impression by making partial disclosures about its fees for services, and because Adeptus voluntarily discloses some but not all information about its fees and therefore had a duty to disclose the whole truth.

87.     Moreover, the Facilities Fees were basic to the transaction between Plaintiff/Class Members and Adeptus.  Adeptus knew that Plaintiff and Class Members were about to enter into transactions with Adeptus under a mistake as to the Facilities Fees, and that Plaintiff/Class Members, because of the relationship between them and Adeptus and the customs of the trade or other objective circumstances, would reasonably expect disclosure of the Facilities Fees.

88.     The fact that Adeptus charges Facilities Fees is material.  Any reasonable person would want to know in advance that they were going to be charged as much as $6,000 or more for the Facilities Fees associated with a visit to a FSER even if the condition was determined to be

non-emergent.  Armed with that knowledge, potential patients could choose to incur the fee or to seek alternative treatment at their doctors' office or an urgent care center that does not charge Facilities Fees.  Without the full disclosure of that information by Adeptus, Adeptus customers are in fact left with no choice.

89.     Adeptus knew and knows that consumers including Plaintiff and Class Members are ignorant of their billing practices and, absent disclosure of the Facilities Fees up-front, Plaintiff and Class Members did and do not have an equal opportunity to discover the true facts.  This is particularly true when a patient believes (wrongly or not) that they need emergency care and do not have time or resources to research their treatment options and their associated costs.

90.     Adeptus knew it was concealing the Facilities Fees and was deliberately silent when it had a duty to disclose the Facilities Fees to Plaintiff and Class Members.

91.     By failing to disclose the Facilities Fees to Plaintiff and Class Members, Adeptus intended to induce Plaintiff and Class Members to receive treatment at its facilities and incur the Facilities Fees.

92.     There is a reasonable and common class-wide inference of reliance due to Adeptus's nondisclosure of information which it was statutorily obligated to disclose.  Plaintiff and Class Members relied on Adeptus's omission by receiving treatment without knowledge of the Facilities Fees and unknowingly incurring those Fees.  The failure to disclose Facilities Fees is part of a common policy and uniform practice of all Adeptus FSERs and will be shown through common evidence.  No rational consumer would seek treatment at the FSER for non-emergent conditions had the exorbitant Facilities Fees been disclosed.

93.     Had Plaintiff and Class Members known in advance that they would be charged astronomical Facilities Fees which they would not be charged elsewhere, they would have sought the same treatment elsewhere.

94.     As a proximate result of receiving treatment without the knowledge of the undisclosed Facilities Fees, Plaintiff and Class Members were damaged, including out of pocket damages, when they were forced to pay some or all of the undisclosed Facilities Fees upon receiving their bill from Adeptus.  Moreover, because the payments of the Facilities Fees were made as a result of Adeptus's fraud, coercion, and/or duress, they were not paid voluntarily.

95.     Because Adeptus's nondisclosure was fraudulent, Plaintiff and Class Members are also entitled to exemplary damages.

96.     Plaintiff and Class Members also request injunctive relief requiring Adeptus to disclose Facilities Fees to all patients before they receive treatment.

### Count Two – Deceptive Trade Practices

97.     Plaintiff incorporates all preceding paragraphs as if fully set out herein.

98.     The Texas Deceptive Trade Practices Act ("DTPA") prohibits false, misleading, or deceptive acts or practices in the conduct of any trade or commerce and any unconscionable action or course of action.  TEX. BUS. & COM. CODE § 17.46 *et. seq.*

99.     Section (24) of § 17.46 provides that "false, misleading, or deceptive acts or practices" includes "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."  TEX. BUS. & COM. CODE § 17.46(24).

100.    Plaintiff and Class Members are consumers within the meaning of the DTPA that sought and acquired by purchase services from Adeptus's FSERs.

101.    Adeptus violated section (24) of § 17.46 by failing to disclose to Plaintiff and Class Members that it would charge a Facilities Fee.

102.    At the time Plaintiff and Class Members transacted business with and received services from Adeptus, Adeptus knew that it would charge Plaintiff and Class Members Facilities Fees that was disproportionate to the actual cost of the medical evaluation and treatment rendered.

103.    Adeptus's failure to disclose the Facilities Fees was intended to induce Plaintiff and Class Members to enter into a transaction with and receive services from Adeptus.

104.    Plaintiff and Class Members would not have entered into any transaction with nor received services from Adeptus's "First Choice" and "UCHealth" FSERs if the Facilities Fees had been disclosed.

105.    There is a reasonable and common class-wide inference of reliance due to Adeptus's nondisclosure of information which it was statutorily obligated to disclose.  The failure to disclose Facilities Fees is part of a common policy and uniform practice of all Adeptus FSERs and will be shown through common evidence.  No rational consumer would seek treatment at the FSER for non-emergent conditions had the exorbitant Facilities Fees been disclosed.

106.    Had Plaintiff and Class Members known in advance that they would be charged astronomical Facilities Fees which they would not be charged elsewhere, they would have sought the same treatment elsewhere.

107.    Adeptus also violated section § 17.50(a)(3) because charging Plaintiff and Class Members hundreds of millions of dollars in undisclosed Facilities Fees is an unconscionable action and course of action.  By charging the undisclosed Facilities Fees in connection with Plaintiffs'

and Class Members' transactions with Adeptus, Adeptus took and takes advantage of Plaintiff's and Class Members' lack of knowledge, ability, experience and/or capacity to a grossly unfair degree.  Because the Facilities Fees are wholly undisclosed, Plaintiff's and Class Members' knowledge, ability, experience, and capacity are the same—they have no idea that they are about to be charged thousands of dollars in undisclosed fees.  Moreover, the unfairness resulting from Adeptus' unconscionable acts is glaringly noticeable, flagrant, complete, and unmitigated.

108.    Adeptus's failure to disclose the Facilities Fees and its unconscionable course of action were a producing cause of Plaintiff's and Class Members' damages, including economic, out of pocket damages.  Moreover, because the payments of the Facilities Fees were made as a result of Adeptus's fraud, coercion, and/or duress, they were not paid voluntarily.

109.    Adeptus acted knowingly or intentionally in failing to disclose the Facilities Fees. Adeptus charges every single consumer Facilities Fees and knew it would do so to Plaintiff and Class Members, but failed to disclose this to Plaintiff and Class Members.  Adeptus thus acted with actual awareness of the falsity of its non-disclosure and with the specific intent that Plaintiff and Class Members would act in detrimental reliance on the non-disclosure.  Plaintiff and Class Members are therefore entitled to three times their economic damages.

110.    Because Adeptus's violation of the DTPA as set out herein was a producing cause of damages to a class of consumers, Adeptus should be enjoined from charging Facilities Fees without adequate, up-front and unambiguous disclosure and should be ordered to restore to Plaintiff and Class Members all money acquired in violation of the DTPA.

111.    Giving 60 days' written notice of this claim is rendered impractical by reason of the necessity of filing suit in order to prevent the expiration of the statute of limitations for absent

Class Members.  With every day that goes by, the claims of Class Members victimized by Adeptus' wrongdoing expire.

112.    Plaintiff will provide a copy of this Complaint to the consumer protection division as required by § 17.501.

### *Count Three – Money Had and Received/Unjust Enrichment*

113.    Plaintiff incorporates all preceding paragraphs as if fully set out herein.

114.    As a result of its collection of Facilities Fees from Plaintiff and Class Members, Adeptus obtained and holds money that in equity and good conscience belongs to Plaintiff and Class Members.

115.    By accepting payment of the undisclosed Facilities Fees, Adeptus received a benefit to the tune of hundreds of millions of dollars.

116.    The benefit of the Facilities Fees was received by Adeptus at Plaintiff's and Class Members' expense because Plaintiff and Class Members were forced to pay them despite the fact that they were undisclosed to Plaintiff and Class Members prior to receiving medical care at Adeptus's FSERs.  Moreover, because the payments of the Facilities Fees were made as a result of Adeptus's fraud, coercion, and/or duress, they were not paid voluntarily.

117.    It would be unjust for Adeptus to retain the benefit of the Facilities Fees because they were secured by fraud.

118.    As a result of Adeptus's unjust enrichment, Plaintiff and the class are entitled to recover as actual damages, and Adeptus should be ordered to disgorge, all Facilities Fees received by Adeptus.

### DEMAND FOR JURY TRIAL

119.    Plaintiff demands trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class request the following relief and that the Court:

a.        Grant certification of this case as a class action;

b.        Appoint Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

c.        Award compensatory damages to Plaintiffs and the proposed Class, or, alternatively, require Defendants to disgorge or pay restitution of its ill-gotten gains;

d.        Issue an injunction preventing Defendants from continuing their fraudulent and deceptive practices;

e.        Award pre- and post-judgment interest;

e.        Award reasonable and necessary attorneys' fees and costs;

f.        Award punitive damages; and

g.        For all such other and further relief as may be just and proper.

Respectfully submitted this 3rd day of January 2017.

**STECKLER GRESHAM COCHRAN PLLC**

By:      */s/ Stuart L. Cochran*
         Stuart L. Cochran
         Texas Bar No. 24027936
         stuart@stecklerlaw.com
         L. Kirstine Rogers
         Texas Bar No. 24033009
         krogers@stecklerlaw.com
         Bruce W. Steckler
         Texas Bar No. 00785039
         bruce@stecklerlaw.com
         R. Dean Gresham
         Texas Bar No. 24027215
         dean@stecklerlaw.com

         12720 Hillcrest Rd., Ste. 1045
         Dallas, TX 75230

23

(P) 972.387.4040
(F) 972.387.4041

*Attorneys for Plaintiff and the Putative Class*